## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NOVOPYXIS, INC. and             )
DROPLETTE, INC.,            )
Plaintiffs and Counterclaim Defendants,  )
                         )     Case No. 21-cv-10883-AK
v.                        )
                         )
ROBERT W. APPLEGATE, JR.,    )
Defendant and Counterclaim Plaintiff,  )
                         )
v.                        )
                         )
MADHAVI GAVINI,         )
Counterclaim Defendant.       )

## MEMORANDUM AND ORDER
## ON MOTION TO DISMISS COUNTERCLAIM

May 11, 2022

**A. KELLEY, D.J.**

      This is a breach of contract related to a patent action.  Plaintiffs and Counterclaim

Defendants Novopyxis, Inc. and Droplette, Inc. (together, "Novopyxis") sued Defendant and

Counterclaim Plaintiff Robert W. Applegate, Jr. ("Dr. Applegate") concerning a consulting,

employment, and invention assignment agreement between the parties.  Dr. Applegate counter-

sued Plaintiffs and Third-Party Defendant Madhavi Gavini ("Gavini") for correction of

inventorship of a patent under 35 U.S.C. § 271 (hereinafter referred to as "Counterclaim 1") and

on related common-law claims.  The patent at issue concerns devices and methods for

medication delivery through skin.

      Novopyxis has moved to dismiss Dr. Applegate's claim, in Counterclaim No. 1 for

correction of inventorship for lack of subject matter jurisdiction, alleging that Dr. Applegate

lacks standing to assert this claim.  For the following reasons, that motion will be **GRANTED**, and Counterclaim No. 1, the correction of inventorship claim will be dismissed.

## I.        Background

Novopyxis filed its Complaint against Dr. Applegate on May 7, 2021, in the Massachusetts Superior Court.  [Dkt. 11 ("State Court Record") at 13].  The Complaint alleges that, in July 2014, Novopyxis and Dr. Applegate entered into a consulting, employment, and invention assignment agreement (the "Agreement").  [Id. at 7].  Under the alleged terms of the Agreement, Dr. Applegate would work for Novopyxis as an independent consultant without salary, with his work counting toward the vesting of stock options.  [Id.].  After one year as a consultant, Dr. Applegate would become a salaried employee of Novopyxis.  [Id.].  Further, Dr. Applegate would assign certain rights of inventorship to Novopyxis.  [See id. at 15–19].  The Complaint alleges that Dr. Applegate breached the Agreement by failing to provide the agreed-upon services to Novopyxis.  [Id. at 10–11].  Novopyxis seeks damages for breach of contract and a declaratory judgment establishing the contractual position of the parties.  [Id. at 12].

Dr. Applegate timely removed this suit to federal district court on May 26, 2021.  [Dkt. 2].  He then filed a counterclaim against Novopyxis and a third-party complaint against Gavini, the CEO of both Plaintiff companies.  [Dkt. 12 ("Counterclaim")].  Dr. Applegate alleges that he performed services for Novopyxis and Gavini, and that Novopyxis and Gavini failed to compensate him pursuant to the terms of the Agreement.  [See generally id. at 14–27].  Further, he alleges that he is the inventor of a device for medication delivery (the "Device") claimed and described in U.S. Patent No. 9,700,686 (the "'686 Patent").  [Id. at ¶ 68].  The inventors named on this patent are Gavini, Rathi Srinivas, and Raja Srinivas.  [Id. at ¶ 67].  Dr. Applegate alleges that this patent has since been assigned or otherwise transferred to Droplette.  [Id. at ¶ 93].  Dr.

Applegate's counterclaim and third-party complaint seek a judgment establishing him as an inventor of the '686 Patent in Counterclaim No. 1, in addition to damages for breach of contract, unjust enrichment, fraud, conversion, and promissory estoppel.  [See id. at 33–40].

On November 12, 2021, Novopyxis filed the instant motion to dismiss for lack of subject-matter jurisdiction.  [Dkt. 27].  The motion is limited to Dr. Applegate's Counterclaim No. 1, which seeks to correct inventorship of the '686 Patent.  Novopyxis alleges that Dr. Applegate executed an invention assignment agreement in which he assigned to Novopyxis ownership of any intellectual property he developed during his engagement with Novopyxis. Accordingly, Novopyxis alleges that Dr. Applegate lacks standing to bring a claim for correction of inventorship of the '686 Patent.  Dr. Applegate opposes this motion, asserting the purported assignment of rights in the '686 Patent is invalid, because he entered into the agreement based upon fraudulent representations.

## II.   Analysis

### a.  Legal Standard

Article III standing is rooted in the Constitution, which limits the jurisdiction of the federal courts to the adjudication of actual "cases" and "controversies."  See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992).  As the party initiating the lawsuit, "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016) (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)).  "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts."  Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)).  When a party moves to dismiss for lack of standing on the pleadings, "we take as true all well-pleaded facts in

the plaintiffs' complaints, scrutinize them in the light most hospitable to the plaintiffs' theory of liability, and draw all reasonable inferences therefrom in the plaintiffs' favor."  Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).  Thus, although the plaintiff bears the burden of establishing and maintaining standing throughout the life of the case, the standard of review at this phase of litigation is "generous" and "plaintiff-friendly."  Id.

To establish Article III standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan, 504 U.S. at 560-61).  Novopyxis argues only that Dr. Applegate, as a counterclaim plaintiff, has failed to establish the injury-in-fact element with respect to Counterclaim No. 1, and not to his state-law counterclaims.  An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (citations omitted). "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct."  Hochendoner, 823 F.3d at 731–32.

### b.  The Counterclaim Complaint

Because Novopyxis' motion to dismiss comes at the pleadings stage, our analysis begins with a review of the allegations in Dr. Applegate's counterclaim complaint which may give rise to his theory of liability on the correction of inventorship claim.  See Fothergill, 566 F.3d at 251. In order to assert a correction of inventorship claim, Dr. Applegate's counterclaim complaint must allege that he has suffered an injury from not being named as an inventor on the '686

4

Patent.  A purported inventor may establish an injury by pleading a "concrete financial interest" in the patents and need not plead "an ownership interest at stake in the suit to have standing." Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed. Cir. 2009) (quoting Chou v. University of Chi., 254 F.3d 1347, 1358–59 (Fed. Cir. 2001)).

Here, Dr. Applegate alleges that he "conceived and designed the Device," [Counterclaim at ¶ 2],[1] which is the subject of the '686 Patent, [id. ¶ 67].  He alleges that he "collaborated with Gavini by conceiving and reducing to practice intellectual property which is now embodied in the issued claims of the '686 Patent."  [Id. ¶ 94].  Dr. Applegate believed that, pursuant to the Agreement, "intellectual property would be patented and that he would be listed as an inventor on the patent."  [Id. ¶ 68].  Accordingly, he alleges that he was not listed as an inventor on the '686 Patent "[t]hrough deliberate omission," [id. ¶ 97], and "is entitled to certain property rights in the '686 Patent pursuant to 35 U.S.C. §§ 261 and 262," [id. ¶ 98].

Dr. Applegate has thus plausibly alleged that he is a potential inventor of the Device described in the '686 Patent.  However, a claim of inventorship alone is insufficient to establish the injury-in-fact element of standing: A purported inventor who does not claim an ownership interest in a patent must plead a "concrete financial interest" in the correction of inventorship. See Larson, 569 F.3d at 1319 (holding that a plaintiff who "affirmatively transferred title to the patents" lacked standing to pursue a correction of inventorship claim because he would financially "reap no benefit" from correction); Chou, 254 F.3d at 1359 (relying on plaintiff's alleged loss of licensing royalties and stock ownership to determine that she pled a "concrete financial interest" in inventorship where she had no ownership interest).

Dr. Applegate has not directly alleged a concrete financial interest in correction of the

---

[1] Dr. Applegate filed an answer and counterclaim complaint as a single document.  [Dkt. 12].  The paragraph numbers cited in this opinion correspond to the paragraphs of his counterclaim complaint, not his answer.

inventorship of the '686 Patent.  He admits that he signed "an invention assignment agreement" with Novopyxis, [Counterclaim at ¶ 1], and states that "the agreement speaks for itself," [id. ¶ 15].  The Agreement, which Novopyxis attached to its initial Complaint against Dr. Applegate, includes in part:

> I will promptly and fully disclose to the Company any and all inventions, discoveries, trade secrets and improvements … which I develop, make, conceive or reduce to practice during my engagement with the Company, either solely or jointly with others (collectively, the "Developments") …. All Developments shall be the sole property of the Company, and I hereby assign to the Company, without further compensation, all my right, title and interest in and to the Developments and any and all related patents … in the United States and elsewhere.

[State Court Record at 15].  Dr. Applegate does not allege that his work on the Device fell outside the terms of the Agreement; conversely, he cites the Agreement in alleging that he expected to be listed as an inventor on the '686 Patent.  [See Counterclaim at ¶ 68]. Accordingly, the Court may infer from the pleadings that the '686 Patent is "the sole property" of Novopyxis, and Dr. Applegate has assigned any interest he held in this patent to Novopyxis "without further compensation."  [State Court Record at 15].  Further, Dr. Applegate has not alleged any non-ownership form of financial interest in the '686 Patent, such as a claim to royalties from the licensing of the patent.  See Chou, 254 F.3d at 1359.

### c.    Dr. Applegate's Contractual Claim

Having not pled a concrete financial interest, Dr. Applegate argues that his claim for correction of inventorship may survive through his claim that the entire Agreement—including his assignment of ownership rights in the Device and the '686 Patent—is invalid.   [Dkt. 33 ("Opp.") at 6].  Dr. Applegate's counterclaim complaint includes a claim of common-law fraud, which alleges that Gavini made "a range of material, false statements to Dr. Applegate … in exchange for his past and continued work on, and inventorship of, the Device."  [Counterclaim at

¶ 112].  The counterclaim complaint alleges that Gavini "made such representations … intending to induce Dr. Applegate to surrender his intellectual property rights in the Device without compensation," [id. at ¶ 114], and that Dr. Applegate "reasonably relied on them in entering into Agreements," [id. at ¶ 115].  Dr. Applegate seeks contractual damages, [id. at ¶ 116], and also included a residual demand for "any additional or alternative relief as this Court deems just and proper," [id. at 40].

Dr. Applegate thus argues that, should he prevail on this contractual claim, the Court may order rescission of the Agreement, thereby revoking his assignment of ownership rights and restoring his concrete financial interest in correction of the inventorship of the '686 Patent. There is no question that the Court may order rescission of the Agreement: under Delaware contract law,[2] rescission and special monetary damages are the available remedies on a claim of fraud in the inducement.  See E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage, 744 A.2d 457, 458 (Del. 1999).  Further, Dr. Applegate appropriately preserved a claim for rescission through his residual demand clause.  [Counterclaim at 40].

A closer question is whether a state-law claim of fraudulent assignment, brought in diversity jurisdiction,[3] may form the basis for an allegation of an injury-in-fact sufficient to sustain a *simultaneous* claim for correction of inventorship.  The Federal Circuit has held that a purported inventor has no standing to pursue a correction of inventorship claim "unless and until he regains title to the patents."  Larson, 569 F.3d at 1327.  In Larson, a plaintiff brought a claim for correction of inventorship, alongside state-law contract claims, including claims of fraud, constructive fraud, and rescission.  Id. at 1322.  There, as here, the plaintiff had "affirmatively

---

[2] The Agreement contains a choice of law provision selecting Delaware law.  [State Court Record at 18].
[3] Dr. Applegate has invoked the Court's diversity jurisdiction over his state-law claims, as he has alleged an amount in controversy exceeding $75,000 and complete diversity of citizenship among the counterclaim parties. [Counterclaim at ¶ 13].

transferred title to the patents," and his only financial interest in correction of inventorship was "succeeding on his state-law claims and obtaining rescission of the patent assignment." Id. at 1326–27. Thus—even though the plaintiff had brought the rescission claim in the same action as the correction of inventorship claim—the court held that he lacked standing to pursue correction of inventorship, relying on earlier precedent establishing that an interest contingent on "judicial intervention" is not a sufficient interest to establish standing. Id. at 1327 (citing Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997)).

The facts of this case materially differ from those of Larson only with respect to the federal court's jurisdiction over the state-law rescission claim. In Larson, all of the plaintiffs' state law claims were brought under supplemental jurisdiction, and the plaintiff relied solely on his claim arising under federal patent law to establish Article III jurisdiction. Id. at 1325–26. Here, the Court has diversity jurisdiction over Dr. Applegate's state-law claims, which will permit him to pursue the rescission claim regardless of whether his patent claim survives. Dr. Applegate argues that this distinction renders Larson's rule inapplicable to his claims, and that these independent sources of jurisdiction permit him to pursue the claims simultaneously, with his standing to pursue the correction of inventorship claim contingent on his success on the rescission claim. [Opp. at 9].

The Federal Circuit has not addressed whether Larson's rule is limited to cases in which a district court lacked independent jurisdiction to hear the state-law claim that would confer standing.[4] District courts appear to have split on the question of whether an independent claim

---

[4] Both parties cite Federal Circuit decisions that do not control. Dr. Applegate's reliance on Jim Arnold is misplaced because that case did not examine the question of standing; its holding is limited to federal question jurisdiction. 109 F.3d at 1577. Novopyxis relies on Nolen v. Lufkin Indus., Inc., which applies Larson's rule, but only after explicitly noting that "the parties [did] not argue that diversity jurisdiction exists." 469 Fed. Appx. 857, 862 & n.1 (Fed. Cir. 2012).

to rescind a patent assignment may confer standing to pursue a claim on the assigned patent.  In Ramachandran v. Jain, the plaintiff sought to correct inventorship after signing an "agreement that undisputedly assigned all his intellectual property interests" in the disputed patent.  No. 3:18-cv-00811-X, 2020 WL 7353714, at *5 (N.D. Tex. Dec. 15, 2020).  There, as here, the plaintiff argued that the agreement was "unenforceable at its creation."  Id. at *4.  Further, the district court had previously ruled that diversity jurisdiction existed over the parties' simultaneous state-law contractual claims.  Ramachandran v. Jain, No. 3:18-cv-00811-X, 2020 WL 3440580, at *1 (N.D. Tex. June 22, 2020).  Despite this independent basis for jurisdiction over the rescission claim, the Ramachandran court analogized the case to Larson, determining that the plaintiff's "interest in the [patent] is similarly contingent on his ability to judicially rescind" the assignment contract, which falls "squarely in the ambit of the rule detailed in Larson." Ramachandran, 2020 WL 7353714, at *4–5.  Accordingly, the court dismissed the correction of inventorship claim, holding that "mere claims of rescission … are not sufficient to create standing." Id. at *4.

However, in Sadofsky v. Fiesta Products, the plaintiff had likewise "assigned all of their interests in the patent to the Defendant" and "included claims for rescission of the assignment based on fraud," arguing that success on the rescission claim would confer standing to sue for patent infringement.  No. 06-cv-6533, 2007 WL 9711192, at *4 (E.D.N.Y. Oct. 17, 2007).  The court ruled that the plaintiff was required "to seek rescission of the assignment prior to bringing a patent infringement action," but held that its diversity jurisdiction over the rescission claim allowed it to "examine the Plaintiff's state law claims without reliance on the federal patent law." Id.  In doing so, it distinguished Jim Arnold—the case the Federal Circuit had relied on in crafting its rule in Larson—by noting that where the Jim Arnold court had "relied upon the fact

that it lacked jurisdiction to address the rescission claim," diversity jurisdiction was instead present in Sadofsky.  Id.  Accordingly, the court held that it had jurisdiction to address each of the plaintiff's claims.  Id.

The Court is inclined to adopt Ramachandran's holding for three reasons.  First, Sadofsky was decided prior to Larson, which controls.  Although Sadofsky and Larson both rely on—and do not differ in their interpretation of—the Federal Circuit's earlier decision in Jim Arnold, the Court cannot presume that the Sadofsky court would have reached the same conclusion after Larson was published.  Second, Sadofsky concerns patent infringement, while Ramachandran, like the case at bar, concerns correction of inventorship.  And third, Sadofsky's holding may be in tension with the fundamental principle that "a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief" sought.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006); Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d 1338, 1348 (Fed. Cir. 2010).  Dr. Applegate's arguments too closely amount to a case for "contingent standing," which no court has embraced.

Accordingly, the Court holds that a plaintiff's claim for rescission of a patent assignment contract cannot, alone, be the basis for standing to sue for correction of inventorship of an assigned patent.  Dr. Applegate thus lacks standing to bring this claim at this time.  Because there is no statute of limitations on a correction of inventorship claim, Dr. Applegate may seek to pursue this claim in a subsequent action.

## III.    Conclusion

For the foregoing reasons, Novopyxis's Motion to Dismiss Counterclaim No. 1 for Lack of Jurisdiction, Dkt. 27, is **GRANTED**, and Counterclaim No. 1 is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated: May 11, 2022

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge